UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLOS N. ANTUNEZ CRUZ, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>JIMENEZ CONSTRUCTION LLC, *et al.*,<br><br>    Defendants. | No. 20-1978 (EGS) |

### MEMORANDUM OPINION

Carlos N. Antunez Cruz ("Mr. Cruz") and Ruth Nicolle Lopez Villalta ("Ms. Villalta") (collectively, "Plaintiffs") bring this action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1001 *et seq.* ("DCMWRA"); and the District of Columbia Wage Payment and Wage Collection Law, D.C. Code § 32-1301 *et seq.* ("DCWPWCL"). *See generally* Compl., ECF No. 1. They have sued two groups of defendants to recover unpaid wages and for damages: Jimenez Construction LLC, Arian Jimenez ("Mr. Jiminez"), Dennise Vasquez-Martinez ("Ms. Vasquez-Martinez ")(collectively, the "Jimenez Defendants"); and Mid-Atlantic Military Family Communities LLC and Mid-Atlantic San Diego LLC. *See id.*

Pending before the Court is the Jimenez Defendants' Motion for Summary Judgment to Dismiss Complaint and Compel Arbitration, ECF No. 13. Upon careful consideration of the motion, the opposition, and reply thereto, the applicable law, the entire record herein, and for the reasons explained below, the Court hereby **GRANTS IN PART AND DENIES IN PART** the Jimenez Defendants' Motion for Summary Judgment.

## I. Background

### A. Factual

Except where indicated, the following facts are undisputed. Mr. Cruz and Ms. Villalta were employed by the Jimenez Defendants from approximately May 1, 2017 until February 19, 2019. *See* Pls.' Counter-Statement of Disputed Material Facts, ECF No. 16-1 ¶¶ 2, 3. When they were hired, Plaintiffs were not required to sign an employment agreement or contract. Defs.' Response to Pls.' Counter-Statement of Disputed Material Facts, ECF No. 17-1 ¶ 6. In early January 2018, Defendant Ms. Vasquez-Martinez gave each Plaintiff an "Employment Agreement" before the workday started, told each of them to sign their respective agreement, and to return them as soon as possible. *Id.* ¶¶ 7-8.

In the "Miscellaneous" Section, each Employment Agreement contains the following choice-of-law provision and arbitration clause:

> The terms of this Agreement shall be governed exclusively by the laws of the State of Maryland (not including its conflict of law provision). Any dispute arising from this Agreement shall be resolved through mediation. If the dispute cannot be resolved through mediation, then the dispute will be resolved through binding arbitration conducted in accordance with the rules of the American Arbitrations [sic] Association.

Employment Agreement, ECF No. 13-4 at 4. The Employment Agreement provides that it was made as of January 1, 2018. *Id.* at 1.

The following is disputed. At the conclusion of the workday on which they were given the Employment Agreements, Ms. Vasquez-Martinez and Mr. Jimenez called Mr. Cruz and Ms. Villalta into a meeting where the Jimenez Defendants told Plaintiffs "that if they did not sign the agreements, then 'there would be no more work' for them." Defs.' Response to Pls.' Counter-Statement of Disputed Material Facts, ECF No. 17-1 ¶ 9. Mr. Cruz and Ms. Villalta "felt pressured to sign the agreement and were not afforded an opportunity to speak to an attorney about what they meant." *Id.* "Because Plaintiffs believed they would be terminated if they did not sign the Employment Agreements before the start of the next work day, they signed them that evening and returned them to the employer the next morning before starting work." *Id.* ¶ 10.

**C. Procedural**

On September 18, 2020, the Jimenez Defendants moved for summary judgment. *See generally* Defs.' Mot. Summ. J. Dismiss Compl. & Compel Arbitration, ECF No. 13; Mem. P. & A. in Supp. of Mot. Summ. J. Dismiss Compl. & Compel Arbitration ("Defs.' MSJ"), ECF No. 13-1. Plaintiffs filed their opposition to the motion, *see* Pls.' Mem. in Opp'n to Jimenez Defs.' Mot. Compel Arbitration ("Opp'n"), ECF No. 16; and the Jimenez Defendants filed a reply in response, *see* Reply to Opp'n to Mot. Summ. J. Dismiss Compl. & Compel Arbitration ("Reply"), ECF No. 17. The motion is ripe and ready for the Court's adjudication.

**II. Legal Standard**

The Court examines motions to compel arbitration using the summary judgment standard of Federal Rule of Civil Procedure 56(c). *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008). "How the parties style the motion seeking arbitration is not determinative." *Booker v. Robert Half Int'l, Inc.,* 315 F. Supp. 2d 94, 99 (D.D.C. 2004) *aff'd,* 413 F.3d 77, 81 (D.C. Cir. 2005). Under Rule 56, summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To that end, "'the party seeking . . . arbitration bears an initial burden of

4

demonstrating that an agreement to arbitrate was made. This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed.'" *Sakyi v. Estee Lauder Cos.*, 308 F. Supp. 3d 366, 375 (D.D.C. 2018)(quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). "'[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Id.* (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). "The Court will compel arbitration if the pleadings and the evidence show that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Fox v. Computer World Services Corp.,* F. Supp. 2d 90 (D.D.C. 2013) (quoting *Booker I,* 315 F. Supp. 2d at 99) (quoting Fed. R. Civ. P. 6(c).

**III. Analysis**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "governs the enforcement of contractual arbitration provisions" related to matters of interstate commerce. *Aneke v. Am. Express Travel Related Servs., Inc.*, 841 F. Supp. 2d 368, 373 (D.D.C. 2012). It provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The "saving clause" in this Section

"permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)(citations and internal quotations omitted).

The FAA reflects "a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *Id.* (citations and internal quotations omitted). It "strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 479-80 (1989)(citation and internal quotation marks omitted). Therefore, "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(citing 9 U.S.C. §§ 3, 4).

In resolving a motion to compel arbitration, the Court focuses only on whether the parties have agreed to arbitrate the matters at issue. *See Aliron Int'l*, 531 F.3d at 865. The Court therefore "may not weigh the merits of a grievance when determining whether to compel arbitration." *Trans World*

6

*Airlines, Inc. v. Air Line Pilots Ass'n*, 172 F.3d 921 (D.C. Cir. 1998) (Table) (per curiam).

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Dist. No. 1, Pac. Coast Dist., Marine Engineers Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 762 (D.C. Cir. 2019)(quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Accordingly, upon a motion to compel arbitration, the court determines whether the Agreement cover the specific disputes and whether a valid agreement to arbitrate exists between the parties. *See Mould v. NJG Food Service Inc.*, 986 F. Supp. 2d 674, 677-678 (D. Md. 2013)[1].

### A. The Arbitration Clauses and Plaintiffs' Claims

Plaintiffs contend that the arbitration clauses do not encompass the claims raised in the complaint on two grounds: (1) their claims do not fall within the scope of the arbitration clauses because they are statutory claims that do not arise under the Employment Agreements, *see* Opp'n, ECF No. 16 at 3-8; and (2) even if the claims arise under the arbitration clauses, the Agreements do not require them to arbitrate claims that

---

[1] The Employment Agreements contain choice-of-law provisions specifying that Maryland law will govern the contracts. Employment Agreement, ECF No. 13-4 at 4.

7

accrued before the Agreements were effective, *id.* at 8-10. The Jimenez Defendants counter that "[i]t is settled law that an arbitration clause which covers disputes 'arising from' an employment agreement does indeed include statutory wage claims," Reply MSJ, ECF No. 17 at 3; and that it is settled law that an arbitration clause covers claims predating the existence of the arbitration clause, *id.* at 4. For the reasons that follow, the Court concludes that Plaintiffs' claims fall within the scope of the arbitration clauses, but that Plaintiffs are not required to arbitrate claims that accrued before the Employment Agreements were effective.

"The FAA creates a strong presumption in favor of enforcing arbitration agreements . . . ." *Stromberg*, 448 F. Supp. 2d at 67. If an agreement to arbitrate is valid and enforceable, the Court should resolve "'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 520 (D.C. Cir. 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). However, neither this principle of construction nor the FAA's generally liberal policy favoring arbitration may "override the clear intent of the parties, or [be used to] reach a result inconsistent with the plain text of the contract . . . ." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

### 1. Plaintiffs' Claims Arise Under the Arbitration Clauses

The arbitration clauses require the parties to arbitrate "[a]ny dispute arising from this Agreement." Employment Agreement, ECF No. 13-4 at 4. Plaintiffs argue that the clauses are "narrow and "cover[] only disputes 'arising from the [employment] agreement[s]'" because the text "omit[s] any language evincing an intent to arbitrate statutory claims or to expand the scope of the arbitration clause beyond disputes 'arising from' the Agreements." Opp'n, ECF No. 16 at 3, 4 (quoting Employment Agreement, ECF No. 13-4 at 4). For support, they point to *Azima v. RAK Investment Authority*, a case in which the court examined a forum-selection clause requiring the parties to litigate "any dispute or claim arising out of, or in connection with, it or its subject matter or formation (including, without limitation, any contractual or non-contractual disputes, claims or obligations)" in England and Wales. 926 F.3d 870, 873 (D.C. Cir. 2019). Plaintiffs point to two key points in *Azima*: (1) "the broad language the parties used . . . expanded [the] scope of the clause to disputes related to the contract's subject-matter or formation,' not just claims related to the contract itself"; and (2) dicta in the case "suggest[s] that had the clause just covered disputes 'arising out of' the agreement, [the court] would have construed

it more narrowly." Opp'n, ECF No. 16 at 4 (citing *Azima*, 926 F.3d at 878).

"[A]rising from this Agreement" is not the broadest language the Parties might have used. However, contrary to the Jimenez Defendants' dismissal of this authority, *see* Reply, ECF No. 17 at 3; the definitions of the contractual terms in *Azima*'s forum-selection clause are relevant here. Indeed, the court considered and cited precedent on arbitration clauses to determine the plain meaning of the terms used in the forum-selection clause at hand. *See Azima*, 926 F.3d at 878 (citing *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*, 348 F.2d 693, 696-97 (2d Cir. 1965)). However, *Azima* does not help Plaintiffs because the court did not discuss the scope of a clause using only "arising from" language. *See id.* at 876-80. It merely commented that "arising out of" does not sweep as broadly as "in connection with." *Id.* at 878.

Plaintiffs recognize that they need to address this Court's decision in *Dowley v. Dewey Ballantine, LLP*, No. CIV.A. 05-622(EGS), 2006 WL 1102768 (D.D.C. Apr. 26, 2006). *See* Opp'n, ECF No. 16 at 5-6. In *Dowley*, the plaintiffs sued and alleged several statutory and common-law claims despite an agreement to arbitrate any "controversy or claim arising out of this Agreement." *Dowley*, 2006 WL 1102768, at *1. In concluding that all of the claims (including the statutory claims) were

10

arbitrable, the Court examined Supreme Court precedent and concluded that the language "reaches all disputes having their origin in the contract, whether or not they implicate interpretation or performance of the contract *per se*," *id.* at *9; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) (instructing that when an arbitration agreement contains the dual phrases arising out of or relating to, it is proper to interpret the agreement broadly to cover matters that "touch" upon the contract to be arbitrable).

Plaintiffs contend that *Dowley* is inapposite for three reasons. First, they argue that "*Dowley* is inconsistent with *Azima* to the extent it requires a broad construction of an arbitration clause that is limited to disputes 'arising from' or 'under' an agreement absent any other language." Opp'n, ECF No. 16 at 5. As explained *supra*, however, *Azima* does not stand for the proposition that "arising from" requires a narrow construction. *Dowley* is therefore not inconsistent with *Azima* in interpreting "arising from" broadly.

Second, Plaintiffs argue that *Dowley* incorrectly applied other mandatory precedent, which they contend "made clear that 'arising under' is only 'somewhat broader' than an arbitration clause that covers 'only specified types of disputes' and narrower than a clause requiring arbitration of 'any grievance

11

affecting the mutual relations of the parties.'" *Id.* at 5 (quoting *Nat'l. R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 762 (D.C. Cir. 1988)). The Court agrees that there are broader arbitration clauses than the one at hand. Still, to construe a clause broadly is not necessarily to construe it as broadly as possible—and *Dowley* did not attempt the broadest possible construction. *See Dowley*, 2006 WL 1102768, at *8 (concluding that the clause covers the claims in the case but not deciding what other claims are and are not covered).

Third, Plaintiffs contend that *Dowley* is "distinguishable" from this case because *Dowley* dealt with claims related to the contract, Opp'n, ECF No. 16 at 6; whereas their "claims derive ***entirely*** from three statutes (the FLSA, the DCMWRA and the DCPCWL) and are completely independent of the Agreements' existence," *id.* The Court disagrees for the reasons explained below.

Here, Plaintiffs' claims for wages on or after January 1, 2018[2] arise from the Employment Agreements because they claim that they are entitled to wages owed for work performed pursuant to those Agreements. *See* Opp'n, ECF No. 16 at 6-7. Even though they request wages not specified in the Agreements, the matter

---

[2] The Court determines *supra* that Plaintiffs are not required to arbitrate claims that arose before the Agreements were effective on January 1, 2018. *See* Section III.A.2.

12

of what wages are owed "touch" upon the Agreements. *Mitsubishi Motors Corp.*, 473 U.S. at 624 n.13. This is because the Employment Agreements include provisions on compensation, including Plaintiffs' base salary, overtime compensation, and compensation for driving and for federal holidays. *See* Employment Agreement, ECF No. 13-4 at 1-2. "An order to arbitrate [a] particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Air Line Pilots Ass'n v. Fed. Express Corp.*, 402 F.3d 1245, 1248 (D.C. Cir. 2005) (emphasis added). Plaintiffs have not provided such "positive assurance" here. Accordingly, the Court concludes that Plaintiffs' claims arise under the Employment Agreements.

### 2. Plaintiffs Are Not Required to Arbitrate Claims That Arose Before the Agreements Were Effective

Plaintiffs argue that the arbitration clauses in the Employment Agreements do not encompass the wage claims that predate them. Opp'n, ECF No. 16 at 8-9. For the reasons explained below, the Court agrees.

"When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts."

*Aliron Int'l, Inc.,* 531 F.3d at 865 (D.C. Cir. 20008) (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

The Jimenez Defendants contend that it is "settled law that an arbitration clause covers claims predating the existence of the arbitration clause." Reply, ECF No. 17 at 4. They are mistaken. As explained below, courts determine whether or not an arbitration clause applies to claims that predate the existence of the clause on a case-by-case basis based on the language of the clause and relevant facts.

On one hand, "[s]everal circuits have held that a broad arbitration clause may encompass claims between the parties that arise out of their ongoing relationship, even if those claims predate the agreement to arbitrate and even if the claims are not related to the subject matter of the agreement containing the arbitration clause." *Nanosolutions LLC v. Prajza*, 793 F. Supp. 2d 46 (D.D.C. 2011)(citing *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1212 (2d Cir. 1972)(an agreement to arbitrate "any controversy between ... members" included conflicts that accrued before the members entered into the agreement, even if they were unrelated to the agreement)). *See also Zink v. Merrill Lynch Pierce Fenner & Smith,* 13 F.3d 330, 332 (10th Cir. 1993)(arbitration clause stating "any controversy between [the parties] arising out of [plaintiff's] business or this agreement" was "clearly broad enough to cover the dispute

14

at issue despite the fact that the dealings giving rise to the dispute at issue occurred prior to the execution of the agreement."); *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1028 (11th Cir. 1982) *abrogated on other grounds, Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)("By its own terms the contract between the parties covers not only disputes arising out of the agreement, but ... includes "any controversy between us arising out of your business." An arbitration clause covering disputes arising out of the contract *or* business between the parties evinces a clear intent to cover more than just those matters set forth in the contract.")(emphasis in original).

On the other hand, courts have refused to give retroactive effect to narrow arbitration clauses. *See, e.g., George Washington University v. Scott,* 711 A.2d 1257, 1259 (D.C. 1998) (parties agreed to arbitrate "any claim ... under this contract"); *Security Watch Inc. v. Sentinel Systems,* 176 F.3d 369, 372 (6th Cir. 1999) (arbitration required "in connection with all disputes ... arising out of or relating to Products furnished pursuant to this Agreement"); *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local 1,* 903 F.2d 924, 927 (2d Cir.1990) (mandatory arbitration of all claims "arising under this agreement and during its term").

Here, the arbitration clauses require the parties to arbitrate "[a]ny dispute arising from this Agreement." Employment Agreement, ECF No. 13-4 at 4. The clauses explicitly restrict arbitration to disputes arising under the Agreement. Therefore, the arbitration clauses are more analogous to the arbitration clauses to which courts have not given retroactive effect than those to which courts have given such effect. Accordingly, the Court concludes that only Plaintiffs' claims that accrued on or after January 1, 2018 are arbitrable.[3]

---

[3] The Court need not address Plaintiffs' remaining arguments. One argument–that the arbitration clause is unconscionable under Maryland law and unenforceable as to the pre-January 1, 2018 claims because the Jimenez Defendants provided no consideration for Plaintiffs' promise to arbitrate those claims, see Opp'n, ECF No. 16 at 1—is unnecessary to reach because the Court has determined that the arbitration clause has no retroactive effect. The other argument—that the choice-of-law provision does not preclude Plaintiffs' DCMWRA and the DCWPCL claims, see id. at 14-16—is not responsive to the Jimenez Defendants' motion. Nor need the Court address the Jimenez Defendants' argument that Plaintiffs' state law defenses are preempted, Reply ECF No. 17 at 4-5; since the Court does not reach Plaintiffs' unconscionability argument. Finally, in their reply briefing, the Jimenez Defendants claim that Plaintiffs "acknowledge[e] they meet the first of the two-prong test under the FAA to determine whether the dispute is arbitrable."' Id. 17 at 2. They are mistaken. Plaintiffs have conceded only that they signed Employment Agreements containing arbitration clauses, not that the arbitration clauses are valid and enforceable agreements. See Opp'n, ECF No. 16 at 10-14.

16

**IV.  Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Jimenez Defendants' Motion for Summary Judgment to Dismiss Complaint and Compel Arbitration, ECF No. 13. Plaintiffs' claims against the Jimenez Defendants may proceed before this Court insofar as they accrued before January 1, 2018. Plaintiffs' claims that accrued on or after January 1, 2018 must be arbitrated and so are **DISMISSED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            April 21, 2023**